FIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GONZALO ALONSO, ) | |
| ) | |
| Claimant, ) | No. 13-cv-8180 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Gonzalo Alonso ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 5.] Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 12.] The Commissioner has done the same. [ECF No. 16.] For the reasons stated below, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On July 1, 2010, Claimant filed applications for DIB and SSI, alleging a disability onset date of September 6, 2006. (R. 139-52.) The claims were denied initially on September 17,

2010, and upon reconsideration on December 16, 2010. (R. 84-88, 89-92.) On August 16, 2011, Claimant requested a hearing before an Administrative Law Judge (the "ALJ"). (R. 95.) A hearing was then held on July 31, 2012. (R. 26-79.) At that hearing, Claimant, who was represented by counsel, appeared and testified. *Id.* A vocational expert (the "VE") also appeared and testified. *Id.*

On August 17, 2012, the ALJ issued a written decision. (R. 12-21.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Act. (R. 21.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since the alleged onset date. (R. 14.) At step two, the ALJ found that Claimant had the severe impairments of history of fractured left patella, history of right rotator cuff repair, diabetes, hypertension, and lower back pain with radiculopathy. *Id.* At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 15.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to do light work. *Id.* The ALJ also found that Claimant's RFC was further limited because he could never kneel, crawl, reach overhead with his right arm, or climb ladders, ropes, or scaffolds, and could only occasionally balance, stoop, crouch, or climb ramps or stairs. *Id.* Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 19.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. R. 20. Specifically,

the ALJ found Claimant could work as a hand packer, an assembler, and a sorter. *Id.* Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 21.)

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). The

reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)

## III. ANALYSIS

Claimant asserts that the ALJ made four errors. First, Claimant argues that the ALJ erred by ignoring the EMG and MRI findings, which supported a finding that he met Listings 1.02 and 1.04A. Second, Claimant contends that the ALJ erred by ignoring the opinions and findings of treating physician Dr. Walter O'Keefe, M.D., and by placing too much weight on an erroneous Functional Capacity Evaluation ("FCE"). Third, Claimant argues that the ALJ should have considered his three-month work attempt a trial work period. Fourth, Claimant argues that the ALJ failed to consider medical evidence that should have allowed for a closed period of disability. The Court finds that the ALJ erred by not adequately addressing whether Claimant met Listing 1.04A. Because this conclusion requires reversal, and remand, the other alleged errors need not be addressed at this time. For whatever assistance it may provide on remand, however, the Court briefly will address the ALJ's discussion of Dr. O'Keefe's opinions.

**A.     The ALJ Failed to Adequately Address whether Claimant Met Any Listing.**

At Step three, an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. 20 C.F.R. § 405.1520(a)(4)(iii). A claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a Listing. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009); *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). In her Step three analysis, though, an ALJ should identify by name the listings that she considered and offer more than a perfunctory discussion of whether Claimant meets them. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Claimant argues that the ALJ erred in analyzing Listing 1.02 by failing to specify whether he was considering Claimant's knee, shoulder, or the combination of both. [ECF No. 12-1, at 9.] Claimant, however, has not done any more than note this supposed error. He has not satisfied his burden to present medical findings supporting a determination that he met Listing 1.02. Accordingly, even if the ALJ erred by failing to fully explain the 1.02 listing decision, the error would be harmless given Claimant's failure to bring forth evidence that would mandate a contrary conclusion.

More successfully, Claimant argues that the ALJ failed to properly consider EMG and MRI findings in the record that support a finding that he met Listing 1.04A. A claimant meets Listing 1.04(A) when he has a disorder of the spine that results in "compromise of a nerve root (including the cauda equina) or the spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.04A. The ALJ's entire discussion of whether Claimant met a Listing was as follows: "No treating physician has identified findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listings of Impairments" and "[i]n making this determination, I have considered Listings 1.02 and 1.04 as well as section 9.00 of the Listings of Impairments in general." (R. 15.)

The Commissioner offers two defenses of this woefully undeveloped analysis. The Commissioner first asserts that Claimant failed to identify evidence that he had "compromise of a nerve root" or "sensory or reflex loss," both of which are necessary to meet Listing 1.04A.

5

This is not an accurate characterization of the record. In both his Pre-Hearing brief to the ALJ and his briefs in this Court, Claimant cited evidence from his MRI and EMGs that are relevant to all of the requirements of Listing 1.04A. *See* ECF No. 12-1, at 7; ECF No. 18, at 1-2; R. 260. There is evidence that Claimant had a spinal disorder – degenerative disc disease – due to his L4-L5, L5-S1 protrusions.[1] (R. 902.) There is evidence that Claimant had compromise of a nerve root because he suffered from nerve root compression characterized by neuro-anatomic distribution of pain due to his neuropathy,[2] diabetic neuropathy,[3] polyneuropathy,[4] radiculopathy,[5] and sciatica.[6] (R. 453, 454, 460, 464-66, 470, 471, 473, 477, 678, 902.) There is evidence that he had spinal motion limitation because of the decreased range of motion in his

---

[1] Protrusion – *see* disk protrusion | disk protrusion – *see* herniation of intervertebral disk | disk herniation, herniation of intervertebral disk – protrusion of the nucleus pulposus or anulus fibrosus of an intervertebral disk, which may impinge on nerve roots; this occurs most often in lumbar vertebrae, and sometimes in cervical vertebrae. The herniated disk may be either contained or noncontained. *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited Feb. 1, 2016) [hereinafter *Dorland's* ].

[2] Neuropathy – a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown. Known etiologies include complications of other diseases (such as diabetes or porphyria), or of toxicity states (such as poisoning with arsenic, isoniazid, lead, or nitrofurantoin). *Dorland's*.

[3] Diabetic neuropathy – any of several clinical types of polyneuropathy seen with diabetes mellitus; there are sensory, motor, autonomic, and mixed varieties. The most common kind is a chronic condition called symmetrical sensory polyneuropathy; it affects first the nerves of the lower limbs and often autonomic nerves; pathologically, there is segmental demyelination of peripheral nerves. An uncommon acute form is the ischemic variety, accompanied by severe pain, weakness, and wasting of proximal and distal muscles, peripheral sensory impairment, and loss of tendon reflexes. *Dorland's*.

[4] Polyneuropathy – neuropathy of several peripheral nerves simultaneously; called also multiple or peripheral neuropathy. Some conditions that are actually polyneuropathies are called neuropathies. *Dorland's*.

[5] Radiculopathy – disease of the nerve roots, such as from inflammation or impingement by a tumor or a bony spur. *See also lumbar radiculopathy,* any disease of lumbar nerve roots, such as from disk herniation or compression by a tumor or bony spur, with lower back pain and often paresthesias. One type is sciatica. *Dorland's*.

[6] Sciatica – a syndrome characterized by pain radiating from the back into the buttock and along the posterior or lateral aspect of the lower limb; it is most often caused by protrusion of a low lumbar intervertebral disk. The term is also used to refer to pain anywhere along the course of the sciatic nerve. Called also Cotugno disease and sciatic neuralgia or neuropathy. *Dorland's*.

6

lumbar spine (R. 290.). There is evidence of motor loss because Claimant had "muscle atrophy[7] noted in the areas of thigh and calf muscles with six inch difference in circumferential measurements from the thigh muscles and eight inch difference in the calf muscles." (R. 678.) There is evidence that Claimant had sensory or reflex loss in the form of moderate sensory motor polyneuropathy, and at times numbness, tingling, and weakness. (R. 454, 457, 902.) Finally, there is evidence of positive straight leg raising tests.[8] (R. 454, 457.) This evidence is enough to satisfy Claimant's burden of presenting medical findings that may match or equal in severity all the criteria specified by Listing 1.04A. Thus, the Commissioner's contention that Claimant failed to present sufficient evidence to support his argument that he met Listing 1.04A is simply wrong.

The Commissioner's second argument is that the ALJ discussed the MRI and EMG findings in the ruling, just not in the section of the decision in which he discussed the Listings. It is true that the ALJ briefly mentioned Claimant's MRI and EMG findings elsewhere in his written decision. But the discussion amounted to no more than the ALJ noting, "[a] separate left leg EMG in May or 2009 found some mild muscle irritability, but little else," "a lumbar spine MRI in August of 2009 revealed disc protrusions at the L4-5 and L5-S1 levels, but no other remarkable findings," and "claimant underwent an EMG of the lower extremities in August of 2010, pursuant to complaints of numbness and tingling in the lower extremities and lumbar spine." (R. 16-18.) Clearly, this discussion did not cover all of the evidence outlined in the

---

[7] Atrophy – a wasting away; a diminution in the size of a cell, tissue, organ, or part. *Dorland's*.

[8] Straight leg–raising test – for lumbar radiculopathy) with the patient lying supine, the symptomatic leg is lifted with the knee fully extended; pain in the lower extremity between 30 and 90 degrees of elevation indicates lumbar radiculopathy, with the distribution of the pain indicating the nerve root involved. *Dorland's*.

7

preceding paragraph. Nor does the mere mention of a test result constitute "analysis." Thus, regardless of where in the opinion this discussion appeared, it is inadequate.

An ALJ is not required to address "every piece of evidence or testimony in the record, [but] an ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In this case, the ALJ failed to discuss medical findings indicating that Claimant may have met Listing 1.04A and then assess whether he actually met that Listing. The ALJ's boilerplate statement in the Listings section and summary of the MRI and EMG test results elsewhere in his decision do not constitute the required analysis. Moreover, the ALJ failed to build a logical bridge from the short summaries of certain of Claimant's test results to the boilerplate conclusion that Claimant did not meet Listing 1.04A. Put concisely, the ALJ's perfunctory and conclusory discussion of Listing 1.04A, which ignored extensive medical evidence in the record, was insufficient.

The Court does not hold at this time that Claimant meets Listing 1.04A. Rather, on remand, the ALJ should reconsider the entire record, determine whether Claimant meets Listing 1.04A, and, if not, thoroughly and clearly explain his decision.

**B.     On Remand, the ALJ Should Devote More Attention to Dr. O'Keefe's Opinions.**

Dr. John O'Keefe started treating Claimant on April 2, 2009. (R. 370.) He continued to see Claimant on numerous occasions throughout 2009 and 2010. (R. 342-70.) As a treating physician with an extensive treatment history, his opinion is important to this case. Indeed, an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the ALJ does not

8

give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010).

In this case, Dr. O'Keefe's opinion played a significant role in the ALJ's ultimate determination. *See* R. 18-19. And the Commissioner does not argue that Dr. O'Keefe's opinion is anything other than important. Yet, the ALJ devoted little actual discussion to Dr. O'Keefe's findings and opinion. Dr. O'Keefe is never mentioned by name. Even the phrases "treating physician" and "claimant's doctor" are each mentioned only once in the RFC analysis. The ALJ only mentions or cites to Dr. O'Keefe's notes in two short paragraphs and one other sentence. (R. 16-17, 18.) This brief analysis overlooked noteworthy evidence that the Court suggests the ALJ might want to review more carefully on remand.

For instance, the ALJ stated that Claimant's "treating physician" (the one time he used the phrase) "indicated that he would be able to return to work with a 30 to 40 pound weight limit, as there was good stability in his right shoulder." (R. 17.) In support of this assertion, the ALJ cited a March 4, 2010 treatment note written by Dr. O'Keefe. (R. 351.) In that note, however, Dr. O'Keefe did not opine that Claimant *would* be able to return to work. Instead, he stated that Claimant "could probably return to work" if, after two to three more months of therapy, he were progressing appropriately. *Id.* In fact, Dr. O'Keefe was uncertain enough about the possibility that Claimant would be able to return to work after more physical therapy that he wanted an FCE conducted before he would "probably be able to return" Claimant to work. *Id.* Dr. O'Keefe did not say on March 4, 2010, that Claimant *would* be able to return to work without more physical therapy and another FCE.

9

The ALJ stated that Claimant's doctor "released him to work at the medium exertional level in October of 2010." (R. 18.) But Dr. O'Keefe never actually opined that Claimant could work at a medium exertional level. Instead, Dr. O'Keefe opined that Claimant "can lift up to 25 lb. loads at chest level and up to 50 lbs. at waist level. He's definitely not going to be able to lift anything overhead." (R. 558.) This opinion is not clearly consistent or inconsistent with the definition of medium work in the Social Security regulations, which includes "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. Dr. O'Keefe limited Claimant's lifting ability in two important respects: he could not lift overhead and he could not lift more than 25 pounds at chest level. The ALJ did not to discuss these limitations and whether they were consistent with "medium work." It likely is true, however, as the Commissioner argues, that this would have been harmless error because the ALJ limited Claimant to light work. (R. 16.) The Court does not mean to suggest otherwise. As long as this case is being remanded for other reasons, however, the Court encourages the ALJ to engage in a more complete review and analysis of Dr. O'Keefe's findings and opinion.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is granted [ECF No. 12], and the Commissioner's motion is denied [ECF No. 16]. The decision of the

Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 8, 2016